# Illinois Official Reports

## Appellate Court

***Allen v. Clark County Park District Board of Commissioners***,
**2016 IL App (4th) 150963**

| | |
|---|---|
| Appellate Court Caption | KIRK ALLEN and JOHN KRAFT, Plaintiffs-Appellants, v. THE CLARK COUNTY PARK DISTRICT BOARD OF COMMISSIONERS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-15-0963 |
| Filed | November 16, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Clark County, No. 15-MR-4; the Hon. Millard Scott Everhart, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Jacob N. Smallhorn (argued), of Tapella & Eberspacher, LLC, of Mattoon, for appellants.<br><br>Lorna K. Geiler (argued), of Meyer Capel, of Champaign, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Harris and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1  In February 2015, defendant, the Clark County Park District Board of Commissioners (Board), conducted a regularly scheduled meeting, during which it took action on two items listed on its agenda: "X. Board Approval of Lease Rates" and "XI. Board Approval of Revised Covenants." The Board voted to approve both items.

¶ 2  The next day, plaintiffs, Kirk Allen and John Kraft, filed a complaint, alleging that the Board failed to comply with the Open Meetings Act (Act) (5 ILCS 120/1 to 7.5 (West 2014)) because, among other things, the Board provided an insufficient explanation—referred to as a "public recital" in the Act—of items X and XI before voting to approve them. The trial court granted the Board's motion to dismiss the complaint. Plaintiffs appeal. We reverse.

¶ 3          I. BACKGROUND

¶ 4  On the evening of February 17, 2015, the Board conducted a regularly scheduled meeting. Prior to that meeting, the Board posted a meeting agenda both at its principal office and on its website. The agenda included two items relevant to this appeal: "X. Board Approval of Lease Rates" and "XI. Board Approval of Revised Covenants." The agenda included no further explanation of those two items.

¶ 5  At the meeting, the following discussion occurred concerning items X and XI, according to the facts alleged in plaintiffs' second amended complaint. Board Vice President Ron Stone said, "[A]pproval of *** of the lease rates *** entertain a motion." Board Commissioner Larry Yargus then moved for the Board to approve the "rates that came from appraisal." The Board voted to approve the rates. Stone then said, "[O]k, uh board approval for the revised covenants." Yargus moved for the Board to "accept the revised covenants." The Board voted to accept the covenants.

¶ 6  After the votes, Stone said, "[O]ne comment, folks, as soon as this gets recorded at the courthouse, then these'll be viewing [*sic*] for public record, now that they have been approved. Hopefully get recorded tomorrow." A member of the public then asked the Board to describe what it had just voted on. Stone responded, "They gotta [*sic*] get recorded at the courthouse first. I'm sorry." Yargus said, "[I]t's just a formality."

¶ 7  The following day, plaintiffs *pro se* filed a complaint for injunctive and declaratory relief against the Board, claiming that the Board violated the Act. Plaintiffs alleged that the posted agenda insufficiently set forth the subject matter of items X and XI and that the Board failed to explain the nature of items X and XI before voting on them.

¶ 8  In March 2015, the Board filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), along with a motion seeking sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013). The Board claimed that plaintiffs were members of a group called Edgar County Watchdogs and operated a website called Illinois Leaks. The Board further claimed that plaintiffs were frequent litigants against public bodies and that their suit in this case was frivolous and intended to harass the Board because plaintiffs disagreed with the Board's plan to develop a subdivision in Mill Creek Park.

¶ 9  In July 2015, an attorney entered an appearance to represent plaintiffs. Later that month, plaintiffs filed a four-count second amended complaint, which is the subject of this appeal. The complaint alleged that the Board violated (1) section 2.02(c) of the Act (5 ILCS 120/2.02(c)

(West 2014)) because the agenda failed to sufficiently notify the public about the subject matter of items X and XI (count I); (2) section 2(c) of the Act (5 ILCS 120/2(c) (West 2014)) by discussing items X and XI during a closed executive session meeting (count II); (3) section 2(e) of the Act (5 ILCS 120/2(e) (West 2014)) by failing to give a sufficient public recital of items X and XI before taking action on those items (count III); and (4) the Board's own written policy by discussing items X and XI during a closed executive session meeting (count IV).

¶ 10 Count III of the second amended complaint requested the following relief: (1) an injunction prohibiting the Board from committing future violations of section 2(e) of the Act; (2) an order declaring as void the final actions taken by the Board at the February 2015 meeting; and (3) an order awarding plaintiffs costs and attorney fees.

¶ 11 In August 2015, the Board filed a section 2-615 motion to dismiss plaintiffs' second amended complaint along with another motion for Rule 137 sanctions. After hearings in September and November 2015, the trial court granted the Board's motion to dismiss plaintiffs' second amended complaint but denied the Board's motions for sanctions.

¶ 12 Plaintiffs appeal the trial court's dismissal of count III of their second amended complaint. (The Board does not appeal the denial of its motion for sanctions.)

¶ 13 II. ANALYSIS

¶ 14 Plaintiffs argue that the trial court erred by granting defendant's section 2-615 motion to dismiss count III of plaintiffs' second amended complaint. Count III alleged that the Board violated section 2(e) of the Act by failing to make a sufficient public recital of items X and XI prior to voting on those items.

¶ 15 A. Section 2-615 of the Code of Civil Procedure

¶ 16 A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2014)) challenges the legal sufficiency of a complaint based on defects apparent on its face. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 37, 988 N.E.2d 984. The critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Id.* In considering a section 2-615 motion to dismiss, the court shall consider "[a]ll facts apparent from the face of the complaint, including any attached exhibits." *Hadley v. Doe*, 2015 IL 118000, ¶ 29, 34 N.E.3d 549. A dismissal under section 2-615 is reviewed *de novo*. *Id.*

¶ 17 B. Statutory Interpretation

¶ 18 This appeal requires us to interpret section 2(e) of the Act (5 ILCS 120/2(e) (West 2014)). Our primary objective when interpreting statutes is to "ascertain and give effect to the true intent of the legislature." *People v. McFadden*, 2016 IL 117424, ¶ 26. The plain language of the statute is the most reliable indicator of legislative intent. *Id.* The Act explicitly states that the general intent of the Act is "to ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly." 5 ILCS 120/1 (West 2014). We therefore interpret the language of the Act with those stated purposes in mind.

¶ 19                    C. Section 2(e) of the Open Meetings Act

¶ 20    Section 2 of the Act (5 ILCS 120/2 (West 2014)) is entitled "Open Meetings." It provides that "[a]ll meetings of public bodies shall be open to the public," subject to enumerated exceptions. *Id.* The section concludes with subsection (e) (5 ILCS 120/2(e) (West 2014)), which provides, in full, the following:

> "Final action. No final action may be taken at a closed meeting. Final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted."

¶ 21                    D. Case Law Addressing Section 2(e)

¶ 22    The only Illinois case that we have found interpreting the public-recital requirement of section 2(e) is *Board of Education of Springfield School District No. 186 v. Attorney General*, 2015 IL App (4th) 140941, ¶¶ 40-42, 44 N.E.3d 1245. In that case, this court addressed whether the Board of Education of Springfield complied with the public-recital requirement of section 2(e) before it approved an agreement terminating the employment of its superintendent, Dr. Walter Milton, Jr. Prior to conducting an open meeting, the Board posted an agenda on its website that included an item entitled, " 'Approval of a Resolution regarding the *** Agreement *** Between Superintendent *** Milton *** and the Board.' " *Id.* ¶ 7. A hyperlink directly underneath that item linked to a digital copy of the agreement. *Id.* ¶ 39. At the meeting, the Board's president introduced the item by stating as follows:

> " 'I have item 9.1, approval of a resolution regarding the *** Agreement. The Board president recommends that the Board *** vote to approve the *** Agreement between *** Milton *** and the Board." *Id.* ¶ 7.

After that introduction, the Board voted to approve the agreement. *Id.*

¶ 23    On appeal, we rejected the argument that the Board violated section 2(e) by failing to give a sufficient public recital prior to approving the agreement. *Id.* ¶¶ 40-42. We held that "section 2(e) of the Act requires that the public entity advise the public about the general nature of the final action to be taken and does not *** require that the public body provide a detailed explanation about the significance or impact of the proposed final action." *Id.* ¶ 42.

¶ 24    The only other case we have found addressing the public-recital requirement of section 2(e) is an unpublished federal district court opinion cited by the parties, *Roller v. Board of Education of Glen Ellyn School District No. 41*, No. 05 c 3638, 2006 WL 200886 (N.D. Ill. Jan. 18, 2006). In that case, the plaintiff was a fourth-year probationary teacher who argued that the school board violated the public-recital requirement of section 2(e) when, during a board meeting, it decided not to renew the teaching contracts of a group of teachers, including plaintiff, without specifically naming her. *Id.* at *4. The agenda posted prior to the meeting stated that the board would be considering "Recommendations for Employment and Dismissal." *Id.* The minutes of the meeting stated that one board member moved, and another seconded, "to accept the recommendation to release fourth year full-time probationary teachers at the end of the 2004-2005 school year as presented on the attached." *Id.* Attached to the minutes was a resolution specifically naming plaintiff and authorizing her dismissal. *Id.*

¶ 25    The *Roller* court rejected the plaintiff's public-recital argument. *Id.* The court noted that it had found no case discussing how specific a public recital must be to comply with section 2(e). *Id.* In lieu of case law, the court focused on the statutory language stating that the board was

required to recite " 'the nature of the matter being considered' " and " 'inform the public of the business being conducted.' " *Id.* (quoting 5 ILCS 120/2(e) (West 2014)). The court concluded that the agenda, along with the recital of the motion described in the minutes, was sufficient to satisfy section 2(e). *Id.*

¶ 26                                    E. This Case

¶ 27    In this case, there is no question that the Board's votes to approve the lease rates and the covenants were both final actions. Accordingly, section 2(e) of the Act required that those actions be preceded by a "public recital" of "the nature of the matter being considered and other information that will inform the public of the business being conducted." 5 ILCS 102/2(e) (West 2014). We therefore must determine whether the facts alleged in plaintiffs' second amended complaint, construed in the light most favorable to plaintiffs, were sufficient to state a violation of the Act upon which relief may be granted. We conclude that plaintiffs' allegations were sufficient.

¶ 28    In accordance with the decisions in *Springfield* and *Roller*, we decide the present case based on the plain language of the statute. Section 2(e) of the Act provides only the most general description of what a public recital must entail. The section provides that the public recital must describe "the nature of the matter being considered" and include such information that will inform the public of the "business being conducted." *Id*. The Act provides no explanation about how specifically the public body must describe the "nature of the matter."

¶ 29    Although we are unsure precisely what standard of specificity is required of a public recital, we can say with confidence that the Board's actions in this case were insufficient. In reaching our decision, we have found helpful an opinion issued by the Illinois Attorney General (AG). "While Attorney General opinions are not binding on the courts, a well-reasoned opinion of the Attorney General is entitled to considerable weight, especially in a matter of first impression in Illinois." *Burris v. White*, 232 Ill. 2d 1, 8, 901 N.E.2d 895, 899 (2009). In Public Access Opinion No. 14-001 (2014 Ill. Att'y Gen. Pub. Access Op. No. 14-001), the AG, in construing the public-recital provision of section 2(e), concluded that the public recital must include "the key terms of [the] proposed public contract or agreement." *Id*. at 7. We agree that the "key-terms" rule is helpful when evaluating whether a public recital was sufficient.

¶ 30    In this case, the Board members introduced item X as an "approval of *** lease rates" "that came from appraisal." Item XI was introduced as "approval for the revised covenants." We hold that those introductions were insufficient to inform the public of the "nature of the matter" and the "business being conducted." The public recital did not provide the public any of the key terms of the lease agreement or covenants. The public was uninformed of what was being leased. Was it canoes? Was it camping equipment? Was it real property being developed into a housing subdivision? Who knows? Nor did the recital indicate who was leasing the property or for how long or how the Park District was going to be compensated. In *Springfield*, we held that the public-recital requirement "does not *** require that the public body provide a detailed explanation about the significance or impact of the proposed final action." *Springfield*, 2015 IL App (4th) 140941, ¶ 42, 44 N.E.3d 1245. We stand by that holding. However, *Springfield* does not stand for the proposition that the public body may provide no details at all. The overarching concern is whether the recital sufficiently informed the public of the nature of the matter being considered. Here, the Board's recital failed to so inform.

¶ 31        We find it telling that, after the Board voted on the lease rates and covenants, a member of the public asked the Board to explain what had happened. The Board responded, not by providing additional information, but by telling the audience, "They gotta [*sic*] get recorded at the courthouse first. I'm sorry." Whatever the standard might be for a public recital, the Board failed to meet it in this case.

¶ 32        The supreme court has granted leave to appeal in *Board of Education of Springfield School District No. 186*, No. 120343 (Ill. May 25, 2016). The supreme court may take advantage of the opportunity to provide guidance on the public-recital provision of Section 2(e) of the Act. We choose to refrain from attempting to provide a detailed standard. However, we are confident that no matter what standard the supreme court eventually adopts, the public recital given by the Board in this case was insufficient.

¶ 33        We conclude that the allegations made in count III of plaintiffs' second amended complaint were sufficient to state a violation of section 2(e) of the Act. Therefore, the trial court erred by dismissing count III.

¶ 34                                 III. CONCLUSION

¶ 35        For the foregoing reasons, we reverse the trial court's judgment.

¶ 36        Reversed.